**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:26-cv-1547 |
| | ) | JURY TRIAL DEMANDED |
| ST. LOUIS ARC, INC., | ) | |
| Defendant. | ) | |

# COMPLAINT

## NATURE OF THE ACTION

This is an action under the Pregnant Workers Fairness Act (PWFA), Title VII of the Civil Rights Act of 1964 (Title VII), as amended by the Pregnancy Discrimination Act of 1978, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices because of pregnancy and to provide appropriate relief to Charging Party Carnisha Scott. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission alleges that Defendant St. Louis Arc, Inc., violated the PWFA and Title VII by failing to accommodate Scott's pregnancy-related limitations, by forcing her to take leave, including unpaid leave, and by terminating her employment because of her pregnancy.

## JURISDICTION AND VENUE

1. The Court has jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.

2. The EEOC is authorized to institute this action under Section 104(a) of the PWFA, 42 U.S.C. § 2000gg-2(a), Sections 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3), and under Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Missouri, Eastern Division.

## PARTIES

4. Plaintiff Equal Employment Opportunity Commission (the Commission) is the agency of the United States of America charged with the administration, interpretation, and enforcement of the PWFA and Title VII.

5. Defendant St. Louis Arc, Inc., is a Missouri non-profit corporation that, at all relevant times, has continuously been doing business in St. Louis, Missouri, and has continuously had at least 15 employees.

6. At all relevant times, Defendant St. Louis Arc has continuously been a covered entity within the meaning of Section 102(2)(B)(i) of the PWFA, 42 U.S.C. § 2000gg(2)(B)(i).

7. At all relevant times, Defendant St. Louis Arc has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

**ADMINISTRATIVE PROCEDURES**

8. More than thirty days prior to the filing of this lawsuit, Carnisha Scott filed a Charge of Discrimination with the Commission alleging that St. Louis Arc violated the PWFA and Title VII.

9. On March 18, 2026, the Commission issued a Determination finding reasonable cause to believe that St. Louis Arc violated the PWFA and Title VII.

10. The Commission's Determination invited St. Louis Arc to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

11. The Commission engaged in communication with St. Louis Arc to provide St. Louis Arc an opportunity to remedy the unlawful practices described in the Determination.

12. The Commission was unable to secure from St. Louis Arc a conciliation agreement acceptable to the Commission.

13. On September 15, 2026, the Commission issued to St. Louis Arc a Notice of Conciliation Failure.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

15. St. Louis Arc provides services to individuals with intellectual and developmental disabilities and operates multiple locations in the St. Louis area.

16. Scott worked for St. Louis Arc as a Community Support Specialist (CSS) from about May 14, 2021, until her termination on or about August 20, 2024.

17. St. Louis Arc managers and supervisors regarded Scott as a hardworking and well-liked employee.

18. The CSS role involves accompanying individuals with disabilities into the community for activities and volunteering.

19. According to the job description, the CSS position requires ensuring client safety and health, and requires the ability to stand, bend, reach, perform CPR, drive, and lift up to 75 pounds.

20. According to St. Louis Arc, the lifting requirement exists because staff may need to physically support clients who stumble or fall or help transfer clients to and from wheelchairs.

21. Scott initially worked at St. Louis Arc's Chesterfield, Missouri location.

22. Scott was pregnant from June 2021 to March 2022 and had lifting restrictions, which prohibited her from lifting more than 20 pounds for a time during her pregnancy.

23. Despite her lifting restrictions, Scott successfully performed her job duties during her pregnancy.

24. In the fall of 2023, Scott transferred to St. Louis Arc's Delmar DivINe location.

25. At Delmar DivINe, Scott reported to Site Coordinator Shatina Longmeyer and Assistant Director Dana Howard.

26. Scott's job duties were the same at St. Louis Arc's Chesterfield location and its Delmar DivINe location.

27. Scott was never required to perform heavy lifting as a CSS.

28. On February 7, 2024, Scott informed Longmeyer and Ginger Lewis, Assistant Director of Human Resources, that she was pregnant and expected to give birth in or around September 2024.

29. Scott asked about maternity leave and was told she was eligible for FMLA leave.

30. On or about May 23, 2024, Scott's doctor imposed a precautionary 20-pound lifting restriction due to pregnancy-related back and pelvic pain.

31. On or about May 24, 2024, Scott gave Longmeyer her doctor's note and explained that the restrictions were related to her pregnancy.

32. Later that day, Longmeyer told Scott that a decision had been made to send Scott home because her job required her to be able to lift up to 75 pounds.

33. On May 28, 2024, Lewis told Scott she could not return to her job with her lifting restriction.

34. Scott explained again to Lewis that the lifting restriction was only for the duration of her pregnancy (at that point, about three months).

35. Lewis told Scott that she could submit an FMLA leave request, and Scott explained that she wanted to work.

36. Scott asked Lewis if there were other positions available that she could perform with her lifting restriction, and Lewis stated that the vast majority – if not all – available positions had similar lifting requirements.

37. Notwithstanding, Lewis referred Scott to a St. Louis Arc recruiter, but the recruiter told Scott that no available positions could be performed with her lifting restriction.

38. After being told by two St. Louis Arc officials that there were no jobs available that could be performed with her restrictions, Scott reluctantly decided to request FMLA leave.

39. On June 5, 2024, Scott's physician completed her FMLA medical form and stated that due to Scott's pregnancy and recovery from childbirth,

Scott would have a 20-pound lifting restriction until October 14, 2024, with an expected delivery date of September 2, 2024.

40. On June 13, 2024, Lewis notified Scott that her request for FMLA leave was approved, but only for the period May 28, 2024, through August 20, 2024. Lewis stated that if Scott was unable to return to work at the end of her FMLA leave, "FMLA rights no longer apply and we would need to discuss how this affects your employment."

41. Scott reminded Lewis that the approved FMLA leave was not long enough to cover the time she needed off, given her September 2, 2024 due date.

42. Lewis told Scott that St. Louis Arc would wait until after Scott's FMLA leave expired to consider the situation.

43. On August 22, 2024, Lewis sent Scott an email stating that Scott's twelve weeks of approved FMLA leave had expired and that because St. Louis Arc had no open positions that met Scott's lifting restrictions and qualifications, her employment was terminated. Lewis also told Scott she could reapply for employment in the future.

44. Neither Lewis nor anyone else from St. Louis Arc inquired about Scott's delivery date or her anticipated return-to-work date before terminating Scott's employment.

45. Scott gave birth on August 27, 2024, and her doctor cleared her to return to work without restrictions on September 24, 2024.

46. In accordance with its written policy and practice, St. Louis Arc allows employees with workplace injuries to return to work as soon as they are medically able, even when such employees require temporary modification of duties to accommodate medical restrictions, including lifting restrictions.

47. According to May 24, 2024, email correspondence between Sherry Grodner, St. Louis Arc's Director of Human Resources, Jacquelyn Magoc, St. Louis Arc's Director of Day Services, and Lewis, St. Louis Arc could have allowed Scott to "work in a temporary fashion without lifting/supporting" duties, but St. Louis Arc officials chose not to accommodate Scott's lifting restrictions and instead placed her on leave.

48. According to that same email correspondence, St. Louis Arc officials knew that Scott's FMLA leave would expire before her baby's expected due date, but they decided to "let [Scott] run out her FMLA … and then give her a positive rehire status for coming back when she is released and ready."

49. According to May 28, 2024, email correspondence, St. Louis Arc officials stated that Scott's "only option is for her to apply for FMLA."

## STATEMENT OF CLAIMS

### Count I
### PWFA – Failure to Make Reasonable Accommodation

50. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

51. Since at least May 2024, St. Louis Arc has engaged in unlawful employment practices in violation of Section 103(1) of the PWFA, 42 U.S.C. § 2000gg-1(1), by denying Scott one or more reasonable accommodations for the known limitations relating to, affected by, and / or arising out of her pregnancy and / or pregnancy-related medical conditions.

52. Scott was a qualified employee under the PWFA because she was an employee who, with reasonable accommodation, could perform the essential functions of her job.

53. Alternatively, Scott was a qualified employee under the PWFA because any inability to perform any essential functions of her job was temporary, could be performed in the near future, and her inability to perform could be reasonably accommodated.

54. St. Louis Arc knew Scott had a 20-pound lifting restriction relating to or arising out of her pregnancy and / or pregnancy-related medical conditions.

55. St. Louis Arc knew that Scott wanted to keep working with her lifting restriction.

56. St. Louis Arc could have made reasonable accommodation to Scott's lifting restriction in a manner that would have allowed her to continue working, whether through temporary reassignment of duties or position or some other manner, without an undue hardship on the operation of St. Louis Arc's business, but it refused to make such accommodation.

57. St. Louis Arc knew that Scott wanted to return to work at the end of her approved leave.

58. After Scott's approved leave ended, St. Louis Arc could have made reasonable accommodation to her lifting restriction, either by extending her leave until her pregnancy-related lifting restriction ended or by returning her to work with temporary reassignment of duties or position or some other accommodation, and such accommodation would not have imposed an undue hardship on the operation of St. Louis Arc's business, but it refused to make such accommodation.

59. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

60. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Scott.

61. As a direct and proximate result of St. Louis Arc's unlawful employment practices, Scott suffered actual pecuniary and non-pecuniary damages including, but not limited to, lost compensation and benefits, inconvenience, emotional pain and suffering, and loss of enjoyment of life.

**Count II**
**PWFA – Forced Leave**

62. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

63. Since at least May 2024, St. Louis Arc has engaged in unlawful employment practices in violation of Section 103(4) of the PWFA, 42 U.S.C. § 2000gg-1(4), by requiring Scott to take leave when other reasonable accommodation could have been provided to the known limitations relating to, affected by, and / or arising out of her pregnancy and / or pregnancy-related medical conditions.

64. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

65. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Scott.

66. As a direct and proximate result of St. Louis Arc's unlawful employment practices, Scott suffered actual pecuniary and non-pecuniary damages including, but not limited to, lost compensation and benefits, inconvenience, emotional pain and suffering, and loss of enjoyment of life.

## Count III
## PWFA – Discharge

67. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

68. St. Louis Arc engaged in unlawful employment practices in violation of Sections 103(3) and 103(5) of the PWFA, 42 U.S.C. § 2000gg-1(3) & (5), by discharging Scott based on her need for reasonable accommodation to the known limitations related to her pregnancy, childbirth, and / or related medical conditions and on account of her requesting or using a reasonable accommodation to the known limitations related to her pregnancy, childbirth, and / or related medical conditions.

69. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

70. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Scott.

71. As a direct and proximate result of St. Louis Arc's unlawful employment practices, Scott suffered actual pecuniary and non-pecuniary damages including, but not limited to, lost compensation and benefits, inconvenience, emotional pain and suffering, and loss of enjoyment of life.

**Count IV**
**Title VII – Discharge (Sex - Pregnancy)**

72. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint as if fully set forth herein.

73. St. Louis Arc engaged in unlawful employment practices in violation of Sections 701(k) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(k) & 2000e-2(a)(1), by discharging Scott because of her pregnancy.

74. The unlawful employment practices complained of in the foregoing paragraphs were intentional.

75. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or reckless indifference to the federally protected rights of Scott.

76. As a direct and proximate result of St. Louis Arc's unlawful employment practices, Scott suffered actual pecuniary and non-pecuniary damages including, but not limited to, lost compensation and benefits, inconvenience, emotional pain and suffering, and loss of enjoyment of life.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining St. Louis Arc, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from failing to make reasonable accommodation to qualified employees' known pregnancy-related limitations.

B. Grant a permanent injunction enjoining St. Louis Arc, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from forcing qualified employees to take leave when another reasonable accommodation can be made to pregnancy-related limitations.

C. Grant a permanent injunction enjoining St. Louis Arc, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from denying employment opportunities to qualified employees because of the need to make reasonable accommodation to their pregnancy-related limitations and taking adverse action against qualified employees on account of their request for or use of reasonable accommodation for pregnancy-related limitations.

D. Grant a permanent injunction enjoining St. Louis Arc, its officers, agents, servants, employees, attorneys, and all persons in active concert or

participation with it, from denying equal employment opportunities on the basis of sex (pregnancy).

E. Order St. Louis Arc to institute and carry out policies, practices, and programs that provide equal employment opportunities for pregnant workers and that eradicate the effects of its past and present unlawful employment practices.

F. Order St. Louis Arc to make Scott whole by providing appropriate backpay, front pay, and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training requirements, notice posting, and policy revisions.

G. Order St. Louis Arc to make Scott whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to debt incurred from moving expenses, transportation costs, job searches, and other expenses, in amounts to be determined at trial.

H. Order St. Louis Arc to make Scott whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

I. Order St. Louis Arc to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

J. Grant such further relief as the Court deems necessary and proper in the public interest.

K. Award the Commission its costs of this action.

## Jury Trial Demand

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

CHRISTOPHER LAGE
Deputy General Counsel

s/ Andrea G. Baran
ANDREA G. BARAN #46520 (MO)
Regional Attorney
Equal Employment Opportunity Commission
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, MO 63103
Phone: (314) 798-1914
andrea.baran@eeoc.gov

s/ Patrick J. Holman
PATRICK J. HOLMAN #21216 (OK)
Senior Trial Attorney
LAUREN W. JOHNSTON #22341 (OK)
Assistant Regional Attorney
Equal Employment Opportunity Commission
Oklahoma Area Office
215 Dean A. McGee, Suite 524

Oklahoma City, OK 73102
Holman Phone: (405) 666-0374
patrick.holman@eeoc.gov
Johnston Phone: (405) 666-0379
lauren.johnston@eeoc.gov

**ATTORNEYS FOR PLAINTIFF
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION**